IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

FELIX BENTLEY,

    Plaintiff,

v.   CASE NO. 3:07-CV-651-MEF

GREEN TREE SERVICING LLC, ET AL.,

    Defendants.

## DEFENDANT GREEN TREE SERVICING LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COMES NOW Defendant Green Tree Servicing LLC ("Green Tree") and, pursuant to Rule 12(b), Fed. R. Civ. P., hereby moves the Court to issue an order dismissing the Complaint on the grounds that it fails to state a claim upon which relief can be granted. In the alternative, to the extent any facts extraneous to the Complaint are necessary for disposition of this matter, Green Tree requests that its motion be converted to a Rule 56 motion for summary judgment, pursuant to Rule 12(b), Fed. R. Civ. P.

In support of this motion, Green Tree relies upon the following:

(1)    The Complaint, with exhibits;

(2)    The Retail Installment Contract, attached hereto as **Exhibit A**;

(3)    The Affidavit of Mandi Carter, attached hereto as **Exhibit B**; and

(4) Memorandum Brief, separately filed.

WHEREFORE, Green Tree Servicing LLC respectfully requests the entry of an order dismissing the Plaintiff's Complaint.

/s/ R. Austin Huffaker, Jr.
R. Austin Huffaker, Jr.
Bar Number: (ASB-3422-F55R)

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: 334/206-3100
Fax: 334/263-4157
E-mail:    rah2@rsjg.com
**Attorney for Defendant Green Tree Servicing LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 17th day of July, 2007, as follows:

James R. Bowles
P.O. Box 780397
Tallassee, AL 36078
JamesRBowles@aol.com

/s/
OF COUNSEL

2

AUG. 9. 2006  1:14PM     US BANK DOCUMENT CENTER                          NO. 4904   666


EXHIBIT A

| MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT ALABAMA | Seller<br>VALUE HOMES<br>144 ALABAMA HIGHWAY 186<br>TUSKEGEE, AL 36083<br>"We" and "us" mean the Seller above, its successors and assigns. | Buyer<br>FELIX J BENTLEY<br>28 COUNTY RD 31<br>NOTSULGA, AL 36866<br>"You" and "your" mean each Buyer above, and guarantor, separately and together. |
|---|---|---|
| No. 319558<br>Date | | |

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 6,077.63 |
|---|---|---|---|---|
| 10.000 % | $ 45,324.13 | $ 34,439.87 | $ 79,764.00 | $ 85,841.63 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | 332.35 | Monthly Beginning On 3-10-99 |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ You are giving a security interest in the real property at _____ N/A _____

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.
☒ If you pay off this Contract early, you may be entitled to a refund of part of the Interest Surcharge and Processing Fee.
**ASSUMPTION:** Someone buying your Manufactured Home  ☒ may subject to conditions be allowed to  ☐ cannot   assume this Contract on its original terms.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.   "e" means an estimate

**CREDIT INSURANCE:** Credit life, credit disability (accident and health or accident and sickness), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured _____ N/A _____
☐ Single ☐ Joint  Prem. $ 0.00  Term N/A
Credit Disability: Insured _____ N/A _____
☐ Single  Prem. $ 0.00  Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

_____ N/A _____     _____ N/A _____
Buyer      d/o/b       Buyer       d/o/b
_____ N/A _____     _____ N/A _____
Buyer      d/o/b       Buyer       d/o/b

**PROPERTY INSURANCE:** You are required to insure the Property securing this Contract with the following minimum property insurance coverage: The lesser of the principal balance of your loan with us, or the selling price of the Manufactured Home.

You may purchase or provide the insurance through any insurance company that is reasonably acceptable to us. If you get the insurance from or through us you will pay $ 0.00 for _____ N/A _____ of coverage.

Liability insurance coverage for bodily injury and/or property damage caused to others is NOT included in this Contract unless checked and indicated below.
☐ The following liability insurance is included in this coverage:
_____ N/A _____

### ITEMIZATION OF AMOUNT FINANCED

| Manufactured Home Price | | $ 40,487.50 |
|---|---|---|
| (including sales tax of $ 987.50 ) | | |
| Buyer Protection/Service Plan. | | |
| Paid to: N/A | $ 0.00 | |
| 1. Cash Price | | $ 40,487.50 |
| Manufacturer's Rebate | $ 0.00 | |
| Cash Down Payment | $ 6,077.63 | |
| 2. Subtotal | $ 6,077.63 | |
| Trade-In Allowance | $ 0.00 | |
| Less: Amount Owing | $ 0.00 | |
| To: N/A | | |
| 3. Net Trade-In | $ 0.00 | |
| 4. Total Down Payment (line 2 plus line 3) | | $ 6,077.63 |
| 5. Unpaid Balance of Cash Price (line 1 minus line 4) | | $ 34,409.87 |
| Fees Paid to Others: | | |
| Paid to Public Officials - Filing Fees Only | | $ 0.00 |
| Paid to Public Officials - Other than Filing Fees | | $ 0.00 |
| Insurance Premiums* | | $ 0.00 |
| (To: N/A ) | | |
| (To: N/A ) | | |
| (To: N/A ) | | |
| Additional Finance Charge(s) Paid To Seller: | | |
| Interest Surcharge Paid to Seller | | $ 0.00 |
| Processing Fee Paid to Seller | | $ 0.00 |
| To: Tag & Title | | $ 30.00 |
| To: POINTS | | $ 0.00 |
| To: DOC STAMPS | | $ 0.00 |
| 6. Subtotal (line 5 plus all Fees Paid to Others) | | $ 34,439.87 |
| 7. Prepaid Finance Charges | | $ 0.00 |
| Amount Financed (line 6 minus line 7) | | $ 34,439.87 |
| *We may retain or receive a portion of this amount. | | |

AIRSS1

ALABAMA MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT
© 1993, 1996 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form MHSIMHLAZ-AL 6/11/97    FJB         (page 1 of 4)

**SALE:** You agree to purchase from us the manufactured home described below, together with the related services, furnishings, appliances and accessories listed below (together referred to as "Manufactured Home"). Your purchase of the Manufactured Home is subject to the terms of this Contract. "Contract" means this document and any separate document that secures this Contract.

| Manufacturer | Model Name & Number | | Year |
|---|---|---|---|
| PIONEER | 402 | | 1999 |
| Serial Number | Length | Width | Color | ☒ New |
| 15906 A/B | 52 | 24 | | ☐ Used |

Services, furnishings, appliances, and accessories include:
- ☐ Tires and Wheels  ☐ Axles  ☒ Refrigerator
- ☒ Oven/Range
- ☐ Washer _____ ☐ Dryer _____
- ☒ A/C Unit(s)
- ☒ Skirting  ☐ Awning(s)
- ☐ Accessory Shed
- ☐ Services
- ☒ Other STEPS, ELEC HOOK

Location of Manufactured Home after delivery to Buyer:
28 COUNTY RD 31
NOTSULGA, AL, 36866

Description of Trade-In:
N/A

☐ **BUYER PROTECTION/SERVICE PLAN:** With your purchase of the Manufactured Home, you have elected to purchase the following optional buyer protection or service plan ("Plan"): ___
N/A
The Plan covers   N/A
  N/A           and will be in
effect     N/A     . See the Plan documents for details.

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Manufactured Home (as defined above) and, unless prohibited by law, all present and future accessions to the Manufactured Home (except that accessions will not include "household goods" as defined in the FTC Credit Practices Rule, 16 C.F.R. 444, if we do not finance the purchase of such household goods).

☐ This Contract is also secured by a separate mortgage or deed of trust dated ____ N/A ____ , on real estate, as shown in the TRUTH IN LENDING DISCLOSURES.
The term "Property" means all property securing this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 34,439.87 , plus interest on the unpaid balance at the rate(s) of 10.000%

per year until the final scheduled payment date. Interest will begin to accrue on Feb. 8, 99
and will accrue on a 30/360 day basis. After the final scheduled payment date, or after you default and we demand payment, we will earn interest on the unpaid principal balance at the rate of 10.000 % per year. You agree to pay this Contract according to the payment schedule shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay:
☐ an interest surcharge fee of $ N/A   ☐ a processing fee of $ N/A . These fees will be ☐ paid in cash, ☐ financed (see ITEMIZATION OF AMOUNT FINANCED), ☐ paid proportionally with each payment.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED.

☐ **ESCROW:** You ☐ may, but are not required to ☐ must pay certain expenses and fees from an escrow account. If an escrow account is established, it will be governed by a separate agreement.

**GENERAL TERMS:** You agree to purchase the Manufactured Home over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

The law of Alabama will govern this transaction. It is also governed by applicable federal law and regulations, including the preemption of state usury laws. The federal Alternative Mortgage Transactions Parity Act may also apply.

We do not intend to charge or collect any interest or fee that is more than the applicable law allows. If we charge or collect any amount over what the law allows, we will apply the excess first to the principal balance, and we will refund any excess if you have paid this Contract in full.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any provision of this Contract is not enforceable, this Contract will remain enforceable without such provision. If we agree with you to any exceptions to the promises or assurances in this printed Contract, such agreement must be in writing and signed by us.

**BALLOON PAYMENT:** If any payment is more than one and one half times as large as the average of earlier scheduled payments, you may refinance that payment when due. You may do so on terms as favorable as the terms originally agreed to in this Contract, if you meet our normal credit standards. This right does not apply if your payment schedule is adjusted for seasonal or irregular income, or we do not offer similar credit at that time.

**PREPAYMENT: YOU MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY.** Any partial prepayment will not excuse any later scheduled payments until you pay in full. If an interest surcharge has been collected and this Contract is prepaid in full by any means within 90 days of the date of this Contract, we will refund or credit you with a pro rata portion of the interest surcharge, except we may retain a minimum of $25.00. If this Contract is prepaid in full after 90 days, the interest surcharge is fully earned and will not be refunded.

If a processing fee has been collected and this Contract is prepaid in full, or upon maturity by acceleration, we will credit to the amount you owe us, the unearned portion of the processing fee. If the original term of this Contract is 61 months or less, we will determine your credit using the Rule of 78's or the sum of the digits method. If the original term of this Contract is more than 61 months, we will determine your credit using the actuarial method. We will apply the credit to the amount you owe us or refund it to you. No refund of less than $1.00 will be made. If this note is renewed or refinanced within 120 days of the date it is made, the processing fee will be refunded or credited on a pro rata basis, computed as of the date of such renewal or refinancing.

You may obtain from us, or the insurance company named in your policy (or certificate of insurance), a refund of any unearned insurance premiums.

                                          AIRSS2

© 1995, 1996 Bankers Systems, Inc., St. Cloud, MN 1-800-397-2341 Form RSSIMHLAG-AL 6/11/97    F.3.B         (page 2 of 4)

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest, real estate mortgage, or deed of trust in the Property, you agree to the following:
A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property valid.
B. The security interest you are giving us in the Property comes ahead of the claim of any other creditor except as agreed to in writing by us. You agree to sign any additional documents or provide us with any additional information we may require to keep the priority of our claim to the Property. You will not do anything to change our interest in the Property.
C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Manufactured Home will be located at the "Location of Manufactured Home after delivery to Buyer" provided in this Contract.
D. You will not try to sell or transfer any rights in the Property without our prior written consent.
E. The Manufactured Home will remain personal property until this Contract is paid in full. Unless we give you prior written consent, you will not allow the Manufactured Home to become a part of real estate or to otherwise lose its treatment as personal property under applicable law.
F. You will pay all taxes, fees, expenses, and assessments on the Property when due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to make a payment when it is due.
B. You fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).
C. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees, and fees for repossession, repair, storage, and sale of the Property securing this Contract. If the original amount financed is more than $300.00, then after default we may collect reasonable attorneys' fees of not more than 15% of the unpaid debt when it is referred for collection to an attorney who is not our salaried employee.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**NOTICE OF DEFAULT:** If you are in default, we will send you a Notice of Default and Notice of Right to Cure Default ("Notice") when required by law. The Notice will explain why you are in default and how you can cure it. We will not accelerate the unpaid balance of this Contract, repossess or foreclose on any Property until after we send you the Notice and any cure period it describes has passed. We may not be required to send you a Notice if (1) you have abandoned the Manufactured Home, (2) you received two Notices in the prior one-year period, or (3) other extreme circumstances exist.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law, this Contract, and any separate personal property security agreement, real estate mortgage, or deed of trust. Before using a remedy, we will send you any notice and wait for any cure period that the law may require for that remedy. Our remedies include the following:
A. We may require you to immediately pay us, subject to any refund required by law, the entire principal balance, plus earned interest and all other agreed charges.
B. We may, but are not required to, pay taxes, fees, expenses, assessments, or other liens or make repairs to the Property if you have not done so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn interest from the date paid at the rate(s) described in the PROMISE TO PAY AND PAYMENT TERMS section. We may require that you establish and fund an escrow account if one is not already required.

C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may take possession of the Property by judicial process. We may also take possession without judicial process but, in doing so, we may not breach the peace or enter into a dwelling used as a current residence. We may then sell the Property and apply what we receive to our reasonable expenses and then toward your obligations, as allowed by law.
E. Except when prohibited by law, we may sue you for additional amounts if the sale proceeds do not pay all you owe us.

Paragraphs C. and D. (above) apply only to personal property security interests. If this Contract is secured by a mortgage or deed of trust, then the foreclosure of such interest may impose other duties and limitations on our rights and remedies, as provided by law and the mortgage or deed of trust.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. If we do not act on an event of default, we do not give up our right to later treat that type of event as a default.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law). When real estate is the security, other rules may apply.

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If the U.S. Department of Housing and Urban Development insures this Contract under its Title 1 Property Improvement and Manufactured Home Regulations, our right to make you pay off this entire Contract is subject to the limitations of those regulations.

**INSURANCE:** You agree to buy insurance on the Property with the types and amounts of coverage indicated in the PROPERTY INSURANCE section, or as we otherwise require. You must name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. If insurance proceeds paid to us do not pay off this Contract, you are responsible for the balance. You will keep the insurance in effect until this Contract is paid in full. If the premium for property insurance is included in the Amount Financed and the insurance is canceled or terminated before this Contract is paid in full, then you agree to give us any premium refund or rebate that you receive. We will credit the refund or rebate to the amount you owe us. We may, at our option, allow you to use the refund or rebate to help pay for replacement insurance that you purchase.

If you do not keep these promises, we may buy insurance to protect our interest in the Property. The insurance we buy may include coverages beyond those we require you to buy and may be from a company you might not choose. The rate we pay may be higher than a rate you might have to pay if you buy it yourself. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn interest from the date paid at the applicable contract rate(s).

**OBLIGATIONS INDEPENDENT:** Each of you who signs this Contract is independently responsible to pay it and to keep the other promises made in this Contract. This is true even if:
A. Someone else has also signed it.
B. We release or do not try to collect from another who is also responsible to pay this Contract.
C. We release any security or do not try to take back any Property.
D. We give up any other rights we may have.
E. We extend new credit or renew this Contract.

**WARRANTIES:** We will provide any warranty information to you separately.

ALRSS3

© 1995, 1996 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form CSSIMHLAZ-AL 9/11/97    (page 3 of 4)

WAIVER: To the extent permitted by law, you agree to give up your rights to require us to do certain things. You do not give up any rights that are provided in this Contract (for example, see the NOTICE OF DEFAULT section). Unless the law or this Contract provide otherwise, we are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

To the extent permitted by law, you waive the benefit of your personal property exemption as to this obligation. Your waiver applies only to the property securing the payment of this obligation.

ASSIGNMENT: This Contract is assigned to Assignee (identify):
BOMBARDIER CAPITAL INC
Mortgage Division
This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## NOTICE TO BUYER

(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due without penalty.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1, 2, 3 AND 4 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT

Buyer(s):

X _Felix J Bentley_____ (Seal) 2-10-99
Signature  FELIX J BENTLEY                    Date

X _____ (Seal) _____
Signature                                     Date

X _____ (Seal) _____
Signature                                     Date

X _____ (Seal) _____
Signature                                     Date

SELLER'S SIGNATURE:

X _____
Name and Title  VALUE HOMES

Disbursement Date: 3-11-99  319558 (This date is for Title 1 HUD Insurance purposes and may be completed after the Contract is signed to reflect the actual disbursement date, and not any estimated disbursement date. It may appear only on the original form.)



EXHIBIT B

# AFFIDAVIT OF MANDI CARTER

STATE OF ALABAMA )

COUNTY OF JEFFERSON )

Before me, the undersigned Notary Public in and for said state and county, personally appeared Mandi Carter, who is known to me, and who being by me first duly sworn, deposes and states as follows:

I am Mandi Carter, and I am a Collection Manager for Green Tree Servicing LLC ("Green Tree"). I am one of the persons at Green Tree who has custody and control over Green Tree's business records. These records were made at or near the time of the event recorded by a person with knowledge of the event and charged with the responsibility for recording such events. These records are kept in the ordinary course of business for Green Tree's regularly conducted business activity, which is Green Tree's customary practice. I have thoroughly reviewed Green Tree's file on this particular account, which leads me to the summary that is set forth below. All documents attached hereto are true and correct copies of business records described herein. All facts set forth herein are either facts of which I have personal knowledge or are an accurate summary of Green Tree's business records as attached hereto.

Green Tree is Delaware limited liability company with its principal place of business in St. Paul, Minnesota.

Green Tree's business records reflect that Felix Bentley entered into an agreement on February 10, 1999 with Value Homes to purchase a new manufactured home. In connection with the financing of this purchase, Bentley executed a Manufactured Home Retail Installment Contract, a true and correct copy of which is attached hereto as **Exhibit A**. The Installment Contract was assigned to Bombardier Capital, Inc. Green Tree is the current servicer of the Installment Contract.

On May 30, 2006, Green Tree issued a Notice of Default/Right to Cure to Bentley. At the time and according to Green Tree's records, Bentley was past due by approximately $1,274.97. Over the next 30 days, Bentley failed to cure the default even though he made an interim payment of $600.00. Attached hereto as **Exhibit B** is a true and correct copy of the Notice of Default/Right to Cure.

After Bentley failed to cure the default within the time provided, the account was referred to the Sullivan & Gray law firm for purposes of repossessing the manufactured home. I did not personally refer this matter to the Sullivan & Gray law firm, and I did not give that firm any instructions as to

which individuals to name in that action. I did, however, subsequently execute an affidavit which was filed in the action.

I have read the Complaint filed against me in this matter. The Complaint alleges that Bentley made a payment of $1,203.85 on December 12, 2006. As of that day, but before consideration of the Bentley payment, the account was past due, including principal, interest, and billed insurance premiums and attorneys fees, by approximately $1,654.65, excluding late fees and unbilled insurance premiums and attorneys fees.

The home was repossessed on or about January 12, 2007. As of that date, the account was past due by approximately $913.63, excluding late fees and unbilled insurance premiums and attorneys fees. From May 30, 2006 until the day of the repossession on January 12, 2007, Bentley failed to bring the account current.

I was not present in Macon County, Alabama when the home was repossessed on January 12, 2007. I have never exerted any control over, never asserted any rights to possession of, and never seen the home.

I am not aware of any written agreement signed by Green Tree in which Green Tree agreed to forbear Bentley's default in return for the payment of $1,203.85."

_____
MANDI CARTER

SWORN TO AND SUBSCRIBED before me this 17th day of July 2007.

_____
Notary Public

My Commission Expires: _____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Nov 19, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Case 3:07-cv-00651-MEF-SRW   Document 5-2   Filed 07/17/2007   Page 7 of 10
AUG. 9. 2006  1:14PM   US BANK DOCUMENT CENTER                        NO. 49

EXHIBIT
A

| MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT ALABAMA<br>No. 319558<br>Date | Seller<br>VALUE HOMES<br>144 ALABAMA HIGHWAY 186<br>TUSKEGEE, AL 36083<br>"We" and "us" mean the Seller above, its successors and assigns. | Buyer<br>FELIX J BENTLEY<br>28 COUNTY RD 31<br>NOTSULGA, AL 36866<br>"You" and "your" mean each Buyer above, and guarantor, separately and together. |
|---|---|---|

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 6,077.63 |
|---|---|---|---|---|
| 10.000 % | $ 45,324.13 | $ 34,439.87 | $ 79,764.00 | $ 85,841.63 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | 332.35 | Monthly Beginning On  3-10-99 |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ You are giving a security interest in the real property at _____ N/A _____

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.
☒ If you pay off this Contract early, you may be entitled to a refund of part of the Interest Surcharge and Processing Fee.
**ASSUMPTION:** Someone buying your Manufactured Home  ☒ may subject to conditions be allowed to  ☐ cannot  assume this Contract on its original terms.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.   "e" means an estimate

**CREDIT INSURANCE:** Credit life, credit disability (accident and health or accident and sickness), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured ___ N/A ___
☐ Single ☐ Joint  Prem. $ 0.00   Term  N/A
**Credit Disability:** Insured ___ N/A ___
☐ Single  Prem. $ 0.00   Term  N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

___ N/A ___        ___ N/A ___
Buyer          d/o/b    Buyer         d/o/b
___ N/A ___        ___ N/A ___
Buyer          d/o/b    Buyer         d/o/b

**PROPERTY INSURANCE:** You are required to insure the Property securing this Contract with the following minimum property insurance coverage: The lesser of the principal balance of your loan with us, or the selling price of the Manufactured Home.

You may purchase or provide the insurance through any insurance company that is reasonably acceptable to us. If you get the insurance from or through us you will pay $ 0.00  for ___ N/A ___ of coverage.
**Liability Insurance** coverage for bodily injury and/or property damage caused to others is NOT included in this Contract unless checked and indicated below.
☐ The following liability insurance is included in this coverage:
___ N/A ___

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| Manufactured Home Price | | $ 40,487.50 |
| (including sales tax of $ 987.50 ) | | |
| Buyer Protection/Service Plan. | | |
| Paid to: N/A | * | $ 0.00 |
| | 1. Cash Price | $ 40,487.50 |
| Manufacturer's Rebate | $ | 0.00 |
| Cash Down Payment | $ | 6,077.63 |
| | 2. Subtotal $ | 6,077.63 |
| Trade-In Allowance | $ | 0.00 |
| Less: Amount Owing | $ | 0.00 |
| To: N/A | | |
| | 3. Net Trade-In $ | 0.00 |
| 4. Total Down Payment (line 2 plus line 3) | | $ 6,077.63 |
| 5. Unpaid Balance of Cash Price (line 1 minus line 4) | | $ 34,409.87 |
| Fees Paid to Others: | | |
| Paid to Public Officials - Filing Fees Only | | $ 0.00 |
| Paid to Public Officials - Other than Filing Fees | | $ 0.00 |
| Insurance Premiums* | | $ 0.00 |
| (To: N/A ) | | |
| (To: N/A ) | | |
| (To: N/A ) | | |
| Additional Finance Charge(s) Paid To Seller: | | |
| Interest Surcharge Paid to Seller | | $ 0.00 |
| Processing Fee Paid to Seller | | $ 0.00 |
| To: Tag & Title | | $ 30.00 |
| To: POINTS | | $ 0.00 |
| To: DOC STAMPS | | $ 0.00 |
| 6. Subtotal (line 5 plus all Fees Paid to Others) | | $ 34,439.87 |
| 7. Prepaid Finance Charges | | $ 0.00 |
| Amount Financed (line 6 minus line 7) | | $ 34,439.87 |
| *We may retain or receive a portion of this amount. | | |

ALRSS1

ALABAMA MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT     FJB
© 1995, 1996 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form MSSIMHLAZ-AL 6/11/97                 (page 1 of 4)

**SALE:** You agree to purchase from us the manufactured home described below, together with the related services, furnishings, appliances and accessories listed below (together referred to as "Manufactured Home"). Your purchase of the Manufactured Home is subject to the terms of this Contract. "Contract" means this document and any separate document that secures this Contract.

| Manufacturer | Model Name & Number | Year |
|---|---|---|
| PIONEER | 402 | 1999 |
| Serial Number | Length | Width | Color | ☒ New ☐ Used |
| 15906 A/B | 52 | 24 | | |

Services, furnishings, appliances, and accessories include:
- ☐ Tires and Wheels  ☐ Axles  ☒ Refrigerator
- ☒ Oven/Range
- ☐ Washer   ☐ Dryer
- ☒ A/C Unit(s)
- ☒ Skirting  ☐ Awning(s)
- ☐ Accessory Shed
- ☐ Services
- ☒ Other STEPS, ELEC HOOK

Location of Manufactured Home after delivery to Buyer:
28 COUNTY RD 31
NOTSULGA, AL, 36866

Description of Trade-in:
N/A

☐ **BUYER PROTECTION/SERVICE PLAN:** With your purchase of the Manufactured Home, you have elected to purchase the following optional buyer protection or service plan ("Plan"): N/A
The Plan covers N/A
N/A and will be in effect N/A. See the Plan documents for details.

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Manufactured Home (as defined above) and, unless prohibited by law, all present and future accessions to the Manufactured Home (except that accessions will not include "household goods" as defined in the FTC Credit Practices Rule, 16 C.F.R. 444, if we do not finance the purchase of such household goods).

☐ This Contract is also secured by a separate mortgage or deed of trust dated N/A, on real estate, as shown in the TRUTH IN LENDING DISCLOSURES.
The term "Property" means all property securing this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 34,439.87, plus interest on the unpaid balance at the rate(s) of 10.000%

per year until the final scheduled payment date. Interest will begin to accrue on Feb. 8, 99 and will accrue on a 30/360 day basis. After the final scheduled payment date, or after you default and we demand payment, we will earn interest on the unpaid principal balance at the rate of 10.000 % per year. You agree to pay this Contract according to the payment schedule shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay:
☐ an Interest surcharge fee of $ N/A     ☐ a processing fee of $ N/A. These fees will be  ☐ paid in cash,
☐ financed (see ITEMIZATION OF AMOUNT FINANCED),
☐ paid proportionally with each payment.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED.

☐ **ESCROW:** You  ☐ may, but are not required to  ☐ must pay certain expenses and fees from an escrow account. If an escrow account is established, it will be governed by a separate agreement.

**GENERAL TERMS:** You agree to purchase the Manufactured Home over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.
The law of Alabama will govern this transaction. It is also governed by applicable federal law and regulations, including the preemption of state usury laws. The federal Alternative Mortgage Transactions Parity Act may also apply.
We do not intend to charge or collect any interest or fee that is more than the applicable law allows. If we charge or collect any amount over what the law allows, we will apply the excess first to the principal balance, and we will refund any excess if you have paid this Contract in full.
You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.
If any provision of this Contract is not enforceable, this Contract will remain enforceable without such provision. If we agree with you to any exceptions to the promises or assurances in this printed Contract, such agreement must be in writing and signed by us.

**BALLOON PAYMENT:** If any payment is more than one and one half times as large as the average of earlier scheduled payments, you may refinance that payment when due. You may do so on terms as favorable as the terms originally agreed to in this Contract, if you meet our normal credit standards. This right does not apply if your payment schedule is adjusted for seasonal or irregular income, or we do not offer similar credit at that time.

**PREPAYMENT: YOU MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY.** Any partial prepayment will not excuse any later scheduled payments until you pay in full. If an interest surcharge has been collected and this Contract is prepaid in full by any means within 90 days of the date of this Contract, we will refund or credit you with a pro rata portion of the interest surcharge, except we may retain a minimum of $25.00. If this Contract is prepaid in full after 90 days, the interest surcharge is fully earned and will not be refunded.
If a processing fee has been collected and this Contract is prepaid in full, or upon maturity by acceleration, we will credit to the amount you owe us, the unearned portion of the processing fee. If the original term of this Contract is 61 months or less, we will determine your credit using the Rule of 78's or the sum of the digits method. If the original term of this Contract is more than 61 months, we will determine your credit using the actuarial method. We will apply the credit to the amount you owe us or refund it to you. No refund of less than $1.00 will be made. If this note is renewed or refinanced within 120 days of the date it is made, the processing fee will be refunded or credited on a pro rata basis, computed as of the date of such renewal or refinancing.
You may obtain from us, or the insurance company named in your policy (or certificate of insurance), a refund of any unearned insurance premiums.

ALRSS2

FJB

© 1995, 1996 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RSSIMHLA2-AL 6/11/97    (page 2 of 4)

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest, real estate mortgage, or deed of trust in the Property, you agree to the following:
  A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property valid.
  B. The security interest you are giving us in the Property comes ahead of the claim of any other creditor except as agreed to in writing by us. You agree to sign any additional documents or provide us with any additional information we may require to keep the priority of our claim to the Property. You will not do anything to change our interest in the Property.
  C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Manufactured Home will be located at the "Location of Manufactured Home after delivery to Buyer" provided in this Contract.
  D. You will not try to sell or transfer any rights in the Property without our prior written consent.
  E. The Manufactured Home will remain personal property until this Contract is paid in full. Unless we give you prior written consent, you will not allow the Manufactured Home to become a part of real estate or to otherwise lose its treatment as personal property under applicable law.
  F. You will pay all taxes, fees, expenses, and assessments on the Property when due.
  G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
  A. You fail to make a payment when it is due.
  B. You fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).
  C. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees, and fees for repossession, repair, storage, and sale of the Property securing this Contract. If the original amount financed is more than $300.00, then after default we may collect reasonable attorneys' fees of not more than 15% of the unpaid debt when it is referred for collection to an attorney who is not our salaried employee.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**NOTICE OF DEFAULT:** If you are in default, we will send you a Notice of Default and Notice of Right to Cure Default ("Notice") when required by law. The Notice will explain why you are in default and how you can cure it. We will not accelerate the unpaid balance of this Contract, repossess or foreclose on any Property until after we send you the Notice and any cure period it describes has passed. We may not be required to send you a Notice if (1) you have abandoned the Manufactured Home, (2) you received two Notices in the prior one-year period, or (3) other extreme circumstances exist.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law, this Contract, and any separate personal property security agreement, real estate mortgage, or deed of trust. Before using a remedy, we will send you any notice and wait for any cure period that the law may require for that remedy. Our remedies include the following:
  A. We may require you to immediately pay us, subject to any refund required by law, the entire principal balance, plus earned interest and all other agreed charges.
  B. We may, but are not required to, pay taxes, fees, expenses, assessments, or other liens or make repairs to the Property if you have not done so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn interest from the date paid at the rate(s) described in the PROMISE TO PAY AND PAYMENT TERMS section. We may require that you establish and fund an escrow account if one is not already required.
  C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
  D. We may take possession of the Property by judicial process. We may also take possession without judicial process but, in doing so, we may not breach the peace or enter into a dwelling used as a current residence. We may then sell the Property and apply what we receive to our reasonable expenses and then toward your obligations, as allowed by law.
  E. Except when prohibited by law, we may sue you for additional amounts if the sale proceeds do not pay all you owe us.

Paragraphs C. and D. (above) apply only to personal property security interests. If this Contract is secured by a mortgage or deed of trust, then the foreclosure of such interest may impose other duties and limitations on our rights and remedies, as provided by law and the mortgage or deed of trust.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. If we do not act on an event of default, we do not give up our right to later treat that type of event as a default.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law). When real estate is the security, other rules may apply.

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If the U.S. Department of Housing and Urban Development insures this Contract under its Title 1 Property Improvement and Manufactured Home Regulations, our right to make you pay off this entire Contract is subject to the limitations of those regulations.

**INSURANCE:** You agree to buy insurance on the Property with the types and amounts of coverage indicated in the PROPERTY INSURANCE section, or as we otherwise require. You must name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. If insurance proceeds paid to us do not pay off this Contract, you are responsible for the balance. You will keep the insurance in effect until this Contract is paid in full. If the premium for property insurance is included in the Amount Financed and the insurance is canceled or terminated before this Contract is paid in full, then you agree to give us any premium refund or rebate that you receive. We will credit the refund or rebate to the amount you owe us. We may, at our option, allow you to use the refund or rebate to help pay for replacement insurance that you purchase.

If you do not keep these promises, we may buy insurance to protect our interest in the Property. The insurance we buy may include coverages beyond those we require you to buy and may be from a company you might not choose. The rate we pay may be higher than a rate you might have to pay if you buy it yourself. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn interest from the date paid at the applicable contract rate(s).

**OBLIGATIONS INDEPENDENT:** Each of you who signs this Contract is independently responsible to pay it and to keep the other promises made in this Contract. This is true even if:
  A. Someone else has also signed it.
  B. We release or do not try to collect from another who is also responsible to pay this Contract.
  C. We release any security or do not try to take back any Property.
  D. We give up any other rights we may have.
  E. We extend new credit or renew this Contract.

**WARRANTIES:** We will provide any warranty information to you separately.

ALRSS3

© 1995, 1996 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RESIMHLAZ-AL 6/11/97    EJB                                              (page 3 of 4)

AUG. 9. 2006 1:16PM    US BANK DOCUMENT CENTER    NO. 4904555 P. 19/61

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. You do not give up any rights that are provided in this Contract (for example, see the NOTICE OF DEFAULT section). Unless the law or this Contract provide otherwise, we are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or (3) give notice that we intend to make, or are making, this Contract immediately due.

To the extent permitted by law, you waive the benefit of your personal property exemption as to this obligation. Your waiver applies only to the property securing the payment of this obligation.

**ASSIGNMENT:** This Contract is assigned to Assignee (identify):
BOMBARDIER CAPITAL INC
Mortgage Division
This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### NOTICE TO BUYER

(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due without penalty.

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1, 2, 3 AND 4 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

**CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT**

Buyer(s):

X _Felix J Bentley_ (Seal) 2-10-99
   Signature FELIX J BENTLEY    Date

X _____ (Seal) _____
   Signature    Date

X _____ (Seal) _____
   Signature    Date

X _____ (Seal) _____
   Signature    Date

**SELLER/S SIGNATURE:**

X _____
   Name and Title   VALUE HOMES

Disbursement Date: 3-11-99  319558 (This date is for Title 1 HUD Insurance purposes and may be completed after the Contract is signed to reflect the actual disbursement date, and not any estimated disbursement date. It may appear only on the original form.)

ALR554
Page 4 of 4

© 1995, 1996 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RSSIMHLA2-AL 8/11/97

AL, AZ, AR, CT, DE, DC, FL, GA, IA (LH PMM), ID, IL, IN, KY, LA, MA (LH), MD, ME (LH First Liens)
MI, MN, MO (LH First Liens), MS, MT, NE, NV, NH, NJ (HO), NM, NY, NC, ND, OH, OK, OR, PA (HO)
RI, SD, TN, TX (HO), UT, VT, VA, WA, WV (LH), WY

X    X

NOTICE OF DEFAULT
AND
RIGHT TO CURE DEFAULT

GREEN TREE

EXHIBIT B

Date of Notice: 05/30/2006

Certified Mail Receipt No. 71067112169388638740

Felix Bentley
280 C R Rd 31 #31
Notasulga, AL 36866

Green Tree-AL LLC
PO Box 380877
Birmingham, AL 35238-0877
800-940-3581

Account No: 517134466

Creditor: Green Tree-ALLLC

Brief identification of credit transaction: Manufactured Home Account

You are now in default on this credit transaction. You have the right to correct this default within 30 days from the postmarked date of this Notice.

If you correct the default, you may continue with the contract as though you did not default.

**Your default consists of:** 3 payments past due(plus $230.00 in fees and charges) totaling $1,274.97.

**Cure of default:** Within 30 days from the postmarked date of this Notice, you may cure your default by paying $1,274.97, which consists of $1,044.97 for past due payments and $230.00 for late charges, or by doing the following: _____NA_____.

**Creditors rights:** If you do not correct your default in the time allowed, the creditor may exercise its rights against you under the law by taking legal action to repossess or foreclose on its collateral.

If you fail to cure the total amount of your default within the cure period described above, then as of 30 days from the postmark of this Notice, the maturity of this contract is automatically accelerated and full payment of the contract in the amount of $35,437.13 shall be due and payable without any further notice from the creditor. Additional expenses, interest and charges accrued after the date of this notice shall also be due and payable. You have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of your default or any other defense you may have to acceleration and foreclosure.

If you have any questions, write Green Tree at the above address or call the number provided.

If this default was caused by your failure to make a payment or payments, and you want to pay by mail, send a cashier's check or money order. Do not send cash. Other payment arrangements may be made by contacting Green Tree.



This is an attempt to collect a debt and any information obtained will be used for that purpose.

COMPLETE THIS SECTION ON DELIVERY
A. Received by (Please Print Clearly)   B. Date of Delivery
C. Signature
X    ☐ Agent  ☐ Addressee
D. Is delivery address different from item 1?  ☐ Yes  ☐ No
If YES, enter delivery address below:

3. Service Type   **CERTIFIED MAIL**
4. Restricted Delivery? (Extra Fee)   ☐ Yes
1. Article Addressed to:

Green Tree-ALLLC
Tempe III
7360 South Kyrene Rd
Tempe, AZ 85283-4583

PS Form 3811, July 2001   Domestic Return Receipt

DF7/01

10/04