IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FELIX BENTLEY, | * |
| Plaintiff, | * |
| | * CASE NO. 3:07-CV-651-MEF |
| v. | * |
| GREEN TREE SERVICING LLC, ET AL., | * |
| Defendants. | * |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT GREEN TREE SERVICING LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Introduction

This action concerns the January 12, 2007 repossession of a manufactured home owned by the Plaintiff, Felix Bentley ("Bentley"). Bentley does not dispute that he was in default in the 12 months preceding the repossession nor at the time the home was repossessed. Instead, he contends that he had an enforceable oral agreement with Green Tree Servicing LLC, through the conversations of the parties' attorneys, to forbear his default. Therefore, according to Bentley, because Green Tree Servicing LLC repossessed the home in contravention of the oral agreement, Green Tree Servicing LLC is guilty of Conversion and Fraud. Bentley also asserts claims of Negligence/Wantonness and Abuse of Process arising out of a replevin action filed by Green Tree Servicing LLC against

Peggy Bentley (an individual believed to be residing in the home). Even if Bentley's complaint allegations are taken as true, they do not state a claim and should be dismissed. To the extent any facts extraneous to the Complaint are necessary for disposition of this action, Green Tree Servicing LLC ("Green Tree") requests this motion be converted to a summary judgment motion pursuant to Rules 12(b) and 56, Fed. R. Civ.

## Statement of Facts

In 1999, Felix Bentley purchased a new Pioneer manufactured home from Value Homes in Tuskegee, Alabama. [Compl., ¶ 2 & Ex. A to Compl.]. Bentley financed the purchase through a Manufactured Home Retail Installment Contract ("Installment Contract"). [Compl., ¶ 2 & Ex. A to Compl.]. The Installment Contract was secured by a lien on the manufactured home. [Compl., ¶ 2 & Ex. A to Compl.]. The Installment Contract required, among others, that Bentley make monthly principal and interest payments of $337.35 on or before the 15th of each month. [Ex. A to Compl.]. Under the Installment Contract, Bentley's failure to make a timely payment constituted a default. [Ex. A to Compl.][See also Exhibit A, p.3, to Mtn.]. If after the expiration of a Notice of Default/Right to Cure, the holder of the Installment Contract could accelerate the indebtedness and/or repossess the home. [See Exhibit A, p.3, to Mtn.].

The Installment Contract was subsequently assigned to Bombardier Capital, Inc. and then later to Green Tree Servicing LLC. [Compl., ¶¶ 3, 5].

As alleged in the Complaint, Bentley "got behind in his payments" after his work

2

hours were cut back. [Compl., ¶ 6]. On May 30, 2006, Green Tree issued a Notice of Default/Right to Cure letter to Bentley. [See Affidavit, attached to Mtn. as Exhibit B]. At the time, Bentley's default was approximately $1,274.97. [See Affidavit, attached to Mtn. as Exhibit B]. Bentley, however, did not cure his default within the 30 day cure period. [See Affidavit, attached to Mtn. as Exhibit B].

Therefore, on August 8, 2006, Green Tree filed a suit for replevin against Peggy Bentley (occupant of the home) in the Circuit Court of Macon County, Alabama. [Compl., ¶6 & Ex. B to Compl.]. A default judgment was obtained in that action granting Green Tree possession of the home against the possessory rights, if any, of Peggy Bentley. [Compl., ¶9 & Ex. B to Compl.].

In December 2006, Bentley received a letter from Green Tree allegedly threatening repossession of the home if the payments were not brought current. [Compl., ¶10]. Bentley then retained attorney Vic Price to assist him "in negotiating a workout of the loan." [Compl., ¶10]. "Price reached an agreement with an attorney with the firm of Sullivan & Grey who purported to represent Green Tree Servicing LLC, whereby Green Tree Servicing LLC agreed that it would not repossess the Plaintiff's mobile home if the Plaintiff made a payment of $1,203.11 on or by December 15, 2006. This agreement was reached in a conversation between Price and the attorney with Sullivan & Grey which occurred over the telephone." [Compl., ¶11].

On December 12, 2006, Bentley brought Price the sum of $1,203.11, which was

3

forwarded to Sullivan & Grey. [Compl., ¶12]. This payment, however, did not bring the account current because in excess of $450 was still owed on the account, excluding late fees and unbilled insurance premiums and attorneys fees. [Affidavit, attached as Ex. B to Mtn.].

The home was repossessed on January 12, 2007. [Compl., ¶13]. At the time of repossession, the account was still past due in excess of $900. [Affidavit, attached as Ex. B to Mtn.].

On June 8, 2007, Bentley filed this lawsuit against Green Tree and Mandi Carter asserting claims of Conversion, Fraud, Negligence/Wantonness and Abuse of Process arising out of the repossession of the home.

## ARGUMENT

### I.   Count I (Conversion) and Count II (Fraud) Are Due to Be Dismissed.

Count I of the Complaint alleges that Green Tree wrongfully converted the manufactured home, and Count II alleges Fraud. The gravamen of these claims is that Bentley and Green Tree had an oral agreement[1] to forbear his default and Green Tree breached this agreement (or, alternatively, committed fraud) when it subsequently repossessed the home after Bentley made a $1,203.11 payment as required by the oral

---

[1] Green Tree disputes Bentley's allegations about an oral agreement to forbear the default.

forbearance agreement.[2] [See Compl., ¶¶11, 20]. Therefore, according to Bentley, Green Tree is guilty of conversion and fraud for repossessing the home in defiance of the oral agreement to forbear the default. Such an agreement, even if assumed to be true, cannot support a claim for Conversion or Fraud because it is violative of the Installment Contract and the Statute of Frauds.

First, the Installment Contract contains a provision stating that the Installment Contract can only be modified by an agreement *in writing signed by Green Tree*. In this regard, the Installment Contract provided in pertinent part:

> If we agree with you to any exception to the promises or assurances in this printed Contract, such agreement must be in writing and signed by us.

[See Ex. A, p. 2 (General Terms) to Mtn.].

Such provisions are enforceable under Alabama law and give effect to preclude allegations by debtors that a creditor has entered in a binding oral agreement to forbear default.

For example, in Williams v. Ford Motor Credit Corp., 435 So. 2d 66 (Ala. 1983), the Alabama Supreme Court affirmed a directed verdict in favor of the creditor in a conversion/wrongful repossession case. There, the plaintiff/debtor claimed that Ford Motor Credit had represented to her that if she sent in two payments and a late charge, there would be no problems with the account. 435 So. 2d at 67. After this conversation

---

[2] The Complaint concedes that Bentley had defaulted on the Installment Contract. Further, the Affidavit of Mandi Carter establishes that Bentley had defaulted on the Installment Contract and was still in default in December 2006 when the alleged oral forbearance agreement was to have been made. Clearly, under the Installment Contract, Green Tree had the right to repossess the home after Bentley's failure to cure the default.

and after making the required payments, Ford Motor Credit nevertheless repossessed the plaintiff's vehicle. Id. The plaintiff subsequently brought suit for conversion, wrongful detention, fraud and misrepresentation. Id. After the trial court entered a directed verdict in favor of Ford Motor Credit, the plaintiff appealed, and the Alabama Supreme Court affirmed. In affirming the directed verdict, the Alabama Supreme Court placed particular emphasis on the written modification provision in the retail installment contract:

> Assuming, *arguendo*, that Mrs. William's telephone conversion on March 3 or 4, 1977, was admissible to show that the contract between the Williamses and FMCC had been modified to extend the time for payment, that testimony would not change the outcome of this case since the security agreement expressly provided that any modification of its terms must be in writing. Likewise, the acceptance of the late payment could not, without a writing evidencing the modification, operate as a waiver of default.

Id. at 68. The appellate court also noted the following:

> [FMCC's] right to repossess the vehicle due to the default of the appellant existed independently of any right to accelerate the indebtedness due to that default. Consequently, the acceptance by FMCC of the late payment for February and the timely payment for March did not nullify the acceleration nor the remainder of the indebtedness; rather, the payments received on March 7 must be considered as payments on the full indebtedness due on the appellant's account immediately after repossession on March 5.

Id.

In addition to the clear terms of the Installment Contract which required that the alleged forbearance agreement be in writing, Bentley's conversion claim fails due to the application of the Statute of Frauds. See § Ala. Code 8-9-2. "The general rule is that a contract required by the statute of frauds to be in writing cannot be modified by subsequent oral agreement." Cotter v. Harris, 622 So.2d 880 (Ala. 1992)(quoting Cammorata v. Woodruff, 445 So. 2d 867, 872 (Ala. 1983)). As recognized in Cotter v.

6

Harris, 622 So.2d 880 (Ala. 1992), an alleged oral agreement to modify a promissory note is unenforceable due to the Statute of Frauds. 622 So. 2d at 881. Here, Bentley's conversion claim is based upon an oral agreement to modify the Installment Contract. This cannot be binding or actionable as a matter of law.

Further, the Statute of Frauds clearly provides that an agreement to forbear a debt must be in writing. See Ala. Code § 8-9-2(7)(stating that "every agreement or commitment to lend money, delay or forbear repayment thereof . . . except for consumer loans . . . less than $25,000" is to be in writing or the agreement is void); Devenney v. Hill, 918 So. 2d 106, 115 (Ala. 2005).

Here, the written modification provision and the Statute of Frauds required that any modification of the Installment Contract or any agreement to forbear had to be in writing signed by Green Tree. The Complaint fails to allege any written agreement; instead, it alleges an oral agreement to forbear the default. Such an agreement is not actionable under a claim of Conversion or Fraud, and therefore Green Tree's repossession of the home cannot be deemed wrongful or fraudulent. See also Bruce v. Cole, 854 So. 2d 47, 57 (Ala. 2003)(noting that if proof of an oral promise, void under the statute of frauds, is essential to maintain the action, there may be no recovery).

**II.    Count III (Negligence/Wantonness) Is Due to be Dismissed.**

As demonstrated in Green Tree's Petition for Removal, Count III alleges that Green Tree was negligent/wanton in failing to name Felix Bentley as a defendant in the replevin action against Peggy Bentley (an individual believed to have been residing in the home). The gravamen of the claim is that Green Tree had a duty to name Bentley in the

replevin complaint. This clearly is not the law, and therefore Count III (Negligence/Wantonness) is due to be dismissed for failure to state a claim.

As a threshold matter, the existence of a duty is a question of law for the Court; where there is no duty, there can be no negligence. See, e.g., Albert v. Sui-Yean Hsu, 602 So. 2d 895, 897 (Ala. 1992).

In Alabama, the rights and responsibilities concerning the repossession of collateral in a secured loan are governed by the Uniform Commercial Code. First, it is without dispute that "a secured party has on default the right to take possession of the collateral." See Boat Shack II, Inc. v. ITT Commercial Finance Corp., 584 So. 2d 1354, 1358 (Ala. 1991)(*quoting* Ala. Code § 7-9-503). With respect to the use of legal process and the repossession of collateral, Ala. Code § 7-9A-609, provides as follows:

> **After default, a secured party:**
>
> **(1)     may take possession of the collateral . . . .**
>
> > **(b) . . . A secured party may proceed under subsection (a):**
> >
> > > (1)     pursuant to judicial process; or
> > >
> > > (2)     **without judicial process,** if it proceeds without breach of the peace.

Ala. Code § 7-9A-609 (emphasis added). Similar language is contained in the Installment Contract. [See Ex. A to Compl.]. Thus, under Alabama law, Green Tree had no affirmative duty, as a matter of law, to name Felix Bentley in the underlying replevin lawsuit.

Further, the underlying action was an action in replevin, which is simply a possessory action between the parties to that action. See Friedman v. Friedman, 2007 Ala. LEXIS 74 (Ala. 2007)(describing detinue actions). See also Ala. Code § 6-6-250, et seq.; Atlantic Bank of New York v. Metropolitan Food Group LLC, 2003 U.S. Dist. LEXIS 4164, at *5 (S.D.N.Y. 2003)("An action in replevin merely determines who between the plaintiff and defendant has a superior right to the personalty at stake; it does not as a practical matter impair or impede . . . [a third party's] ability to protect its interest.]. It is not a mandatory action, and it certainly is not an action intended to establish the rights of all parties who may potentially claim or have an interest in the collateral. See Bank of Keystone v. Wagensen, 152 F.R.D. 644, 647 (D. Wy. 1994). Indeed, "[o]ne who claims title to or the right to the possession of property replevied, adversely to the plaintiff, is not a necessary party." 145 A.L.R. 905. See also Bank of Keyston, 152 F.R.D. at 647.

In short, Green Tree, as a matter of law, cannot be negligent or wanton in failing to name Felix Bentley in a replevin lawsuit when Alabama law clearly provides that a creditor is under no such obligation.

### III.  Count IV (Abuse of Process) Is Due to Be Dismissed.

The claim for Abuse of Process also fails as a matter of law and therefore should be dismissed.

In Count IV of his Complaint, Bentley contends that Green Tree committed an Abuse of Process by causing "a writ of execution to be issued against an individual other than the Plaintiff, yet describing property owned by the Plaintiff, for the purpose of

securing possession of the Plaintiff's property." [Compl., ¶ 27]. In order to prove the tort of abuse of process, "a plaintiff must prove: (1) the existence of an ulterior purpose; (2) a wrongful use of process; and (3) malice." Preskitt v. Lyons, 865 So. 2d 424, 430 (Ala. 2003). As noted by the Alabama Supreme Court in discussing the tort,:

> . . . If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse. . . . However, if the suit is brought, not to recover on the cause of action stated in the complaint, but for a collateral purpose, there is an abuse of process.

Duncan v. Kent, 370 So. 2d 288, 290 (Ala. 1979)(*quoting* 1 Am.Jur.2d Abuse of Process § 13)). In Preskitt, the Alabama Supreme Court listed several examples of legal processes for which an action will lie if the process is abused:

> Entering up judgment and suing out execution after the demand is satisfied; suing out attachment for an amount greatly in excess of the debt; causing an arrest for more than is due; levying an execution for an excessive amount; causing an arrest when the party cannot procure bail, and keeping him imprisoned until, by stress thereof, he is compelled to surrender property to which the other is not entitled....

Preskitt, 865 So. 2d at 430-31 (quoting Dickerson v. Schwabacher, 58 So. 986, 988 (Ala. 1912)).

Here, the facts in the Complaint, even if true, do not support a cause of action for abuse of process. The Complaint affirmatively shows that a replevin suit for possession was filed against Peggy Bentley (an individual believed to be an occupant of the home). In this action, Green Tree sought possession of the manufactured home against the possessory right, if any, of Peggy Bentley. Indeed, Bentley specifically alleges that the

Writ of Seizure was obtained "for the purpose of securing possession of the Plaintiff's property." [Compl., ¶ 27].

Bentley's complaint allegations emphasize that the Writ was obtained and used to accomplish the very purpose for which it was designed – possession of the home against any right of Peggy Bentley. Here, while there may or may not have been an occupant by the name of Peggy Bentley in the home, there is no allegation that the replevin order (or Writ) was used to accomplish something other than possession of the collateral, a purpose for which it may lawfully be issued. Absent proof that the Writ was used for a purpose wholly apart from that to which it was intended, a claim for abuse of process fails as a matter of law. See, e.g., Willis v. Parker, 814 So. 2d 857, 866 (Ala. 2001); Ross v. Ford Motor Credit Co., 867 S.W.2d 546, 554 (Mo. Ct. App. 1993).

## CONCLUSION

As shown above, the Complaint fails to state a claim upon which relief can be granted. For these reasons, Green Tree Servicing LLC respectfully requests entry of an order dismissing the Complaint in its entirety, with prejudice.

_____
R. Austin Huffaker, Jr.
Bar Number: (ASB-3422-F55R)

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: 334/206-3100
Fax: 334/263-4157
E-mail:    rah2@rsjg.com

**Attorney for Defendant Green Tree Servicing LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 17th day of July, 2007, as follows:

James R. Bowles
P.O. Box 780397
Tallassee, AL 36078
JamesRBowles@aol.com

OF COUNSEL