IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **FELIX BENTLEY** | * |
| | * |
| Plaintiff, | * |
| | * CASE NO. 3:07-cv-651-MEF-SRW |
| v. | * |
| | * |
| **GREEN TREE SERVICING LLC, ET AL.,** | * |
| | * |
| Defendants. | * |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

As Defendant correctly states, "[i]n its simplest, this is a wrongful repossession action." The facts, as alleged by the Complaint, are that Defendant Green Tree Servicing LLC (hereinafter "Green Tree") financed a mobile home for Felix Bentley. Bentley fell behind on the payments and negotiated a forbearance agreement with Green Tree to bring the payments current. Bentley followed through with the agreement and sent Green Tree the money necessary to catch up the arrearage. Defendant Green Tree, however, proceeded to repossess the mobile home through the use of a writ of execution. The writ of execution was issued in a case filed by Green Tree against Peggy Bentley, an individual whom the Plaintiff, Felix Bentley, does not know, and who had no interest whatsoever in the mobile home in question. The writ of execution was obtained with the use of an affidavit signed by Defendant Mandi Carter who is identified in the affidavit as Green Tree's "Collection Manager." The affidavit indicated that it was being submitted in connection with a case filed by Green Tree against Peggy Bentley. Nothing in the affidavit showed that Felix Bentley was a named Defendant in the case. The affidavit, as well as the documents attached thereto, plainly indicated, however, that Felix

Bentley, and not Peggy Bentley, was the purchaser and owner of the mobile home. Nevertheless, Carter executed the affidavit swearing that "Defendant [Peggy Bentley] remains in default under the terms of the contract, and is currently past due for the payments listed on Exhibit C." The affidavit further alleges that "Defendant [Peggy Bentley] refuses to release the property to Plaintiff," and that the cause of Peggy Bentley's "unwarranted" detention of the property is "the Defendant's [Peggy Bentley's] reluctance to part with the described property despite *his* failure to make payments thereon." (Emphasis added)

What the Defendants have done in this case is to obtain a writ of execution authorizing the Macon County sheriff to seize property of Felix Bentley based upon a lawsuit filed against Peggy Bentley. They have done so under circumstances such that Felix Bentley did not know of the lawsuit, was not made a party to the lawsuit, and was never served with process until the very moment the writ of execution was employed to seize his home. If this does not amount to a wrongful repossession, it is difficult to imagine what would. Plainly, the actions of both Green Tree and Carter constitutes wrongs for which the law provides a remedy.

**1.     Mandi Carter had a duty not to execute an affidavit which would result in the seizure of Felix Bentley's property in connection with a case filed by Green Tree against Peggy Bentley and to which Felix Bentley was not a party.**

Defendants argue that Carter has been fraudulently joined as a party because she had no duty to name Felix Bentley as a Defendant in the repossession case. Defendants have, quite understandably, focused their argument upon whether Carter had a duty to designate the proper Defendants at the time the case was filed. In framing the question thus, the Defendants seek to have the court ignore the essential allegations which Felix Bentley makes against Carter in Count III in his Complaint. The essence of the allegations against Carter are not simply that she failed

2

to name Felix Bentley as a Defendant. The essence of the allegations is that Carter executed an affidavit designed to result in the seizure of Felix Bentley's property in a case in which Felix Bentley was not a party. While it may or may not have been Mandi Carter's duty to properly name the Defendants in the repossession lawsuit (and whether she had such a duty, or assumed such a duty, can only be determined by discovery in the present case) Carter clearly had a duty not to sign an affidavit which would have the effect of causing the Macon County sheriff to seize property of an individual who had not been properly notified of the legal proceeding.[1]

The writ of execution issued in this case against Felix Bentley's mobile home was clearly issued illegally. Section 6-9-1 Code of Alabama (1975) provides that a successful Plaintiff may have a writ of execution issued against property "of the party against whom such judgment is entered." Felix Bentley has alleged, and Defendants do not dispute, that no judgment was ever entered against him. In fact, no lawsuit was ever even filed against Felix Bentley. The issuance of a writ of execution against Felix Bentley's property is therefore wrongful and actionable under Alabama law. *Hutchinson v. Weaver*, 93 So. 899; 208 Ala. 280 (1922).

The specific question now before the court is whether there is ***any possibility*** that Carter's action and participation in this wrongful repossession could result in the imposition of liability upon her. If any such possibility exists, the case is due to be remanded. Felix Bentley contends that Carter was negligent and/or wanton in signing the aforementioned affidavit. Bentley contends that Carter's actions reflect a classic instance of negligent conduct. While Carter may or may not have a duty to properly designate and identify the persons Green Tree proposed to sue, it is difficult to imagine any court holding that a person executing an affidavit which will

---

[1] While Defendants adamantly contend that Carter did not have a duty to name Felix Bentley as a Defendant to the case, it seems evident that *some* employee of Green Tree had such a duty. Carter identifies herself as Green Tree's "Collection Manager." It is thus anything but clear whether Carter had a duty to properly identify the correct defendant before suit was filed.

3

result in the seizure of a persons home, has no duty to make even the slightest inquiry into whether the affidavit properly names the target of the writ of seizure, whether the writ properly describes the property to be seized, and whether the target of the writ is the same person against whom judgment has been obtained. It seems manifest that any court would hold that a person signing documents which will result in the seizure of a citizen's home has a duty to exercise reasonable care to determine whether the document she is signing is accurate and due to be legally issued. In the context of a fraud case, Alabama law has been said to impose a duty upon a party to read and inspect documents that affect his or her legal rights or liabilities. In *Walker v. Trans South Financial Corporation*, 1996 W.L. 406836 (M.D. Ala. 1996) the United States District Court for the Middle District of Alabama found that Alabama law imposed such a duty. Judge Albritton's opinion in that case stated as follows:

> Thus, in each of these cases, the Alabama Supreme Court held that the statute of limitations for fraud commenced to run at or shortly after the time the aggrieved party received documents which, if read, would have put him on notice of the fraud. This emphasis on the time of receipt clearly implies that Alabama law imposes upon a party the duty to read and inspect any document which might affect that person's legal rights or liabilities. 1996 W.L. 406838 (M.D. Ala. 1996)

If a party to a written contract has a duty to inspect and read the document, then it follows that an agent executing an affidavit on behalf of a creditor that will result in the repossession of a citizen's home has, at least, the same duty. Based upon the record now before the court, it seems overwhelmingly evident that there is at least ***some possibility*** (and probably a good possibility) that the Plaintiff can establish a cause of action against Carter based upon the allegations of Count III of the Complaint. This case is therefore due to be remanded.

4

**2.	The fact that Alabama law allows self-help repossession does not immunize either Green Tree or Carter from liability for wrongfully causing a writ of execution to be issued.**

Defendants would apparently have this court construe §7-9A-609 of the Alabama Uniform Commercial Code, which allows a secured party to repossess collateral through self-help, as immunizing creditors from liability for wrongful repossession. That interpretation is clearly a misreading of the statute and ignores pertinent Alabama case law. The Alabama Supreme Court has stated that the right of self-help repossession is a "limited privilege." *Callaway v. Whittenton*, 892 So.2d 852, 855 (Ala. 2004). Recovery of collateral subject to a security interest "through fraud, artifice, stealth or trickery without consent of the owner, implied or express, is wrongful and will support an action for the conversion for the chattel." *Ford Motor Company v. Byrd*, 351 So.2d 555, 560 (Ala. 1977). Furthermore, a creditor may not employ an action "manifesting force or violence or naturally calculated to provide a breach of the peace" to effect a repossession. *Madden v. Deere Credit Services*, Inc., 598 So.2d 860, 865 (Ala. 1992). The fact that Green Tree had the right of self-help does not excuse or immunize it from liability for wrongfully procuring a writ of execution for the seizure of Felix Bentley's home. The mobile home, in this instance, was not recovered through self-help. It is nothing but pure speculation to suggest that Green Tree could have successfully recovered this mobile home without the intervention of the Macon County sheriff.[2] Plainly, one may not escape liability for wrongfully procuring a writ of execution merely by asserting, as a theoretical possibility, that the repossession might have been accomplished by self-help. The statutory authorization granted to

---

[2]	Even if Defendants had accomplished this repossession through self-help, their actions would still have constituted a wrongful repossession because, according to the Complaint, at the time of the seizure, Felix Bentley was not in default on his payment obligations to Green Tree.

5

a secured creditor to employ self-help does not convey blanket immunity to that creditor for employing wrongful actions to accomplish a repossession or seizure of a citizen's property.

**3.     The Complaint sets forth a legitimate cause of action against Mandi Carter for abuse of process.**

Defendants argue that there is no possibility that Felix Bentley can prevail on his claim for abuse of process for essentially three reasons.  First, Defendants assert that Carter had no legal duty to name Felix Bentley as a Defendant in "the possessory action against Peggy Bentley." (Defendants Response, p.10)  This is a somewhat circular argument.  Clearly, if the Defendants were merely suing Peggy Bentley to recover Peggy Bentley's property, they would have no duty to name Felix Bentley as a party to that action.  Just as clearly, the Defendants may not, with impunity, file suit against Peggy Bentley and use that suit as a vehicle to seize property of Felix Bentley under a writ of execution.  The wrongful use of the process of a writ of execution – one of the three essential elements of a claim for abuse of process – can certainly be established under the facts of this case.  Further, there exists the clear possibility that the Plaintiff could prove the existence of an ulterior motive on the part of Carter and Green Tree for the issuance of the writ of execution, as well as malice, the two other essential elements of a cause of action for abuse of process.  There is, at the very least, *some possibility* that Felix Bentley can establish a cause of action against Carter under this theory.

Defendants next argue that the abuse of process claim is fatally flawed because "the writ of seizure was confined to its regular and legitimate function – to obtain possession of the home."  This argument is disingenuous.  The fact that the purpose of a writ of execution is the seizure of property does not immunize one against claims for abuse of process for wrongfully

6

using such writ to seize the property of a citizen who has not even been sued, let alone suffered a judgment to be entered against him. The Alabama Supreme Court has recognized that the misuse of a writ of execution can result in liability for abuse of process. In *Preskitt v. Lyons*, 865 So.2d 424 (Ala. 2003) a case cited by Defendants, the Alabama Supreme Court recognized that "levying an execution for an excessive amount" can lead to liability for abuse of process. *Id.* 430-31. If levying execution for an excessive amount can constitute abuse of process, then levying execution against the property of a citizen against whom no judgment has ever been obtained must also surely be an action that can constitute abuse of process.

Defendants cite the case of *Willis v. Parker*, 814 So.2d 857 (Ala. 2001) for the proposition that the issuance of writ, for its proper and legitimate function, can never constitute abuse of process. The *Willis* case, however, is not even remotely similar to the case now before the court. *Willis* involved a claim for malicious prosecution and abuse of process asserted by Parker for wrongfully bringing an eviction action against Parker. Willis had initiated an eviction action against Parker based upon an oral lease, after having given Parker two notices that he was terminating the tenancy. Parker later convinced Willis that he, Parker, had assigned the oral lease to a related business entity and Willis thereafter dismissed the first proceeding and filed a second action against the alleged assignee of the lease. Parker then sued Willis for malicious prosecution and abuse of process based upon the initial eviction action which Willis had brought against Parker. The Alabama Supreme Court held, in that case, that merely proceeding with a complaint, and later agreeing to dismiss the charge, does not constitute abuse of process. In *Willis*, there was no seizure of property and no process issued against a citizen who had not been made a party to the lawsuit. Neither the facts of *Willis*, nor its holding, provide any guidance in the current case. In this case, Green Tree and Carter, working through a case filed against Peggy

7

Bentley, procured a writ of execution against property of Felix Bentley and, using that writ, seized Felix Bentley's home without first having sued him or obtained a judgment against him. Nothing in the *Willis* case suggests that the type of conduct engaged in here by Green Tree and Carter cannot constitute abuse of process.

Finally, Defendants make the somewhat strained argument that, "Carter did not 'use' any process in the possessory action with respect to Plaintiff." (Defendant's Response, p.12) One can only guess what Defendants mean when they assert that Carter did not "use" any process. Felix Bentley has alleged that Carter was instrumental in procuring the unauthorized writ of execution. The documents which are now a part of the record in this case indicate that Carter executed the affidavit that significantly aided Green Tree in securing the writ. If this does not amount to "using" legal process, then it is difficult to imagine what sort of act would. There is, simply put, no merit to Defendant's final argument.

### 4. Conclusion

Felix Bentley has alleged that his mobile home was improperly seized through the wrongful use of a legal process (i.e., a writ of execution) initiated by Green Tree with the aid and assistance of Mandi Carter. He has made claims against Green Tree and Carter for negligence and abuse of process.[3] The Complaint states facts which, if proven, will establish valid claims against both Defendants. There is absolutely nothing in the record before the court which suggests that the claims asserted against Carter are fraudulent in nature. It is impossible to say, at this point in the proceedings, that there is no possibility that Felix Bentley can make a valid case against Carter for negligence or for abuse of process. Carter has not been fraudulently

---

[3] Plaintiff has also made claims solely against Green Tree for conversion and fraud.

joined.  The claims against Carter are legitimate and supported by ample evidence, and the motion to remand is due to be granted.

        /s/James R. Bowles_____
        JAMES R. BOWLES
        Attorney for Plaintiff, Felix Bentley
        Bar Number: (ASB-3306-E39J)

OF COUNSEL:
Law Offices of James R. Bowles
P.O. Box 780397
2 So. Dubois Avenue
Tallassee, Alabama 36078
(334) 283-6548
Fax: (334) 283-5366
(Email) JamesRBowles@aol.com

## CERTIFICATE OF SERVICE

      I hereby certify that on September 11, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

R. Austin Huffaker, Esq.
RUSHTON, STAKELY, JOHNSTON
   & GARRETT, PA.
Post Office Box 270
Montgomery, Alabama 36101-0270

        /s/James R. Bowles_____
        Of Counsel